Robert Forsyth & Son, Inc.
vs. } Law No. 84179.
Scheindel Tannenbaum

December 30, 1931.

CHURCHILL, J. Motion for new trial after verdict for the plaintiff for $11,960.55.

The plaintiff, prior to April 29th, 1930, dealt in coal, grain, farming implements, etc. On that day it sold its entire stock in trade to the defendant. Various payments were made on account, leaving a balance due. $11,960.55 was claimed by the plaintiff.

The defendant admitted she owed the plaintiff $2,674.64.

The items in dispute which went to the jury were:

(1) Accounts receivable;
(2) Farming implements;
(3) Miscellaneous items of merchandise;
(4) Coal.

(1) ACCOUNTS RECEIVABLE.

The amount claimed by the plaintiff was $5,088.31.

The agreement of the parties in respect to this item lies in two documents and in oral discussions between the parties.

Robert F. Eddy, who owned the real estate on which the business of the plaintiff was conducted and who owned a majority of the capital stock of the plaintiff, agreed in writing with Harry M. Tannenbaum, the son of the defendant, to convey to him or his nominee the real estate described, inventory and other personal property and the accounts of the corporation. This agreement was dated April 1, 1930. The agreement provided for the payments to be made and then recited "such accounts receivable as the second party desires to acquire after inspection, to be paid for in cash at their face value."

On April 30th, 1930, the plaintiff corporation by its bill of sale conveyed to the defendant its "books of account and other business records * * * and such of its accounts receivable as said Scheindel Tannenbaum may desire to purchase after inspection of the same." It is undisputed that on the same day, April 29, 1930, the defendant took possession of the property conveyed by the bill of sale.

From that time until the 18th of July, 1930, there were discussions and disputes between the plaintiff's counsel, Mr. Hart, who had charge of the matter, and the son of the defendant, Solomon Tannenbaum, in respect to these accounts. The plaintiff took the position that the defendant must elect which she would take. The defendant asked for more time in which to examine the accounts.

On July 18th, 1930, after a demand made by the plaintiff, through Mr. Hart, that the defendant make her selection, Solomon Tannenbaum stated that defendant would not take any of the accounts.

One of the issues sent to the jury on the accounts receivable was whether or not under all the circumstances the refusal to select the accounts receivable was exercised in a reasonable time.

Another issue sent to the jury was whether or not the defendant had treated the accounts as her own.

The defendant collected $4,755.50 on the accounts receivable. These collections were made between April 29th, 1930, and July 18th, 1930.

Solomon Tannenbaum testified that Mr. Hart gave him time in which to investigate the state of the accounts and authorized him to collect them in the interim for and on account of the plaintiff. This was explicitly denied by Mr. Hart, who testified, furthermore, that he was constantly pressing the defendant, or Solomon Tannenbaum, to select the accounts which defendant desired.

On July 18th, 1930, Solomon Tannenbaum presented a check to Mr. Hart for the amount of the collections, $4,755.50, which Mr. Hart accepted but without prejudice to the right of the plaintiff to "assert claim for other Accounts Receivable."

After July 18th, 1930, the defendant proceeded to collect other of the accounts receivable amounting to $1,957.53.

Clarence E. Eddy, who was manager of Robert Forsyth & Son, Inc., the plaintiff, was employed by the corporation, which was organized by the defendant and which took over the business after April 29, 1930. He collected, between that time and a few weeks before the trial, $964.72 of the accounts receivable which accrued in favor of the plaintiff before April 29, 1930. There was no testimony that he was authorized so to act by the plaintiff or by the defendant or by the corporation organized by the defendant. He had not turned over his collections to anyone previous to the trial and testified he still had the amount in his hands. The amount so collected, $964.72, did not include either the amount of $4,755.50 collected by the defendant or the amount of $1,957.53 collected by the defendant after July 18, 1930.

The jury, on the testimony before them, were fully warranted in including in the verdict the entire amount of the accounts receivable and on this item the verdict is fully supported by the testimony.

(2) FARMING IMPLEMENTS.

The issue to the jury on this item was simple.

By the contract to sell of April 1, 1930, Robert F. Eddy agreed to cause the corporation to sell "the inventory and other personal property * * * the salable merchandise constituting the inventory of said corporation to be ascertained by actual count or estimates mutually agreed upon at market price as of the day of delivery."

The bill of sale of April 29th, 1930, conveyed "merchandise * * * and all other tangible personal property of Robert Forsyth & Son, Inc."

It was agreed at the trial that by the contract of sale the merchandise to be sold was to be of salable quality.

Harry Tannenbaum, son of the defendant, testified that while negotiations were pending, and on a question put by him, Mr. Hart stated that the

term "saleable" included and referred to merchandise which was capable of a quick turnover as well as to merchandise of a salable quality. That there was any such conversation relating to, or any such definition given to the term "saleable" was denied by Mr. Hart.

The defendant also put in evidence a letter written on behalf of the defendant and dated July 19th, 1930, in which no such contention is put forth but which, on the contrary, speaks of an inventory of farm implements being made. The plaintiff argued with much force that the defence on this item was obviously an afterthought.

The inclusion of this item is amply supported by the evidence.

(3) MISCELLANEOUS ITEMS OF MERCHANDISE.

A number of items of merchandise were disputed on the ground that they were unsaleable. These items amounted to $1,037.44. They included: Alfalfa ($708.75), Everseal, a type of roofing material ($261.75), and a number of smaller miscellaneous items.

Testimony was introduced on behalf of the plaintiff to the effect that the alfalfa was for the most part in good condition, that a few bags only were not in first class condition but that all was saleable. Testimony on behalf of the defendant tended to show that the alfalfa was in such condition that it was absolutely unsaleable.

The plaintiff produced testimony that the Everseal was in saleable condition. The defendant denied that it was so. In addition the plaintiff rebutted the testimony respecting the poor quality of this item of merchandise by evidence tending to show that certain broken containers, which it is claimed were examined by the witnesses for the defendant and which showed marked deterioration of the product, did not in fact contain Everseal, and that the Everseal was stored in a different portion of the store.

The other items were in comparatively small amounts. Concerning all these there was a question of fact as to their condition.

In addition to the question of saleability raised there was, as to certain of these items, the question as to whether or not after inspection the defendant had rejected promptly and notified the plaintiff of her rejection.

On all these disputed items the jury had evidence before them which clearly sustains their verdict in this respect.

(4) COAL.

The plaintiff claims $5,032.89. The defendant admits that at the time of the sale there was coal on hand, worth $3,578.01.

The parties agreed to ascertain the amount of coal not by the books but by the cubical contents of the bin. An experienced engineer arrived at a measurement on which the price of $5,032.89 is based, eliminating a small amount which it was agreed should not be measured in that manner.

Testimony introduced by the defendant raised a question in regard to the amount of coal but the testimony was such that the jury were warranted in accepting as a basis the cubical contents as submitted by the witness for the plaintiff.

Justice between the parties does not require a new trial. The verdict was a fair one on all the evidence and therefore the motion for a new trial must be and is hereby denied.

For plaintiff: Curran, Hart, Gainer & Carr.

For defendant: Frank H. Bellin.